IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| v. | ) | Case No. 3:26-CR-14 |
| | ) | JUDGES CRYTZER/McCOOK |
| | ) | |
| TYLER SHANE WELLS | ) | |
| ALEXANDER BONILLA-SERVIN | ) | |

**MOTION TO DISMISS INDICTMENT BASED ON THE UNLAWFUL ENTRY OF FEDERAL OFFICERS**

Come Defendant Tyler Wells and Alexander Bonilla-Servin, pursuant to the Fourth Amendment to the United States Constitution and the Due Process Clause of the Fifth Amendment to the United States Constitution and respectfully move this Honorable Court for the entry of an Order dismissing the indictment in this case on the grounds that the charges in this case emanate from the unlawful action of the Immigration and Customs Enforcement Officers in entering private property and dismissal is the appropriate remedy to address this constitutional violation. In the alternative, the defendants ask the Court to suppress any evidence that resulted from the unconstitutional search and seizure.

**I.      INTRODUCTION**

On the morning of January 13, 2026, Immigration and Customs Enforcement (ICE) entered a private road in Hardin Valley that serves as an entrance to a residential construction site, known

as Sagittarius Lane.[1] The driveway is located down the street from Hardin Valley Academy. After a minor collision between an ICE vehicle, a black Grand Cherokee and a blue GMC pick-up truck that was driven by eighteen-year-old, Mr. Alexander Bonilla-Servin (Bonilla), the ICE agents drew their weapons, pointed them at Bonilla, yelling commands to him, and when he did not comply quickly enough for their satisfaction, broke the window to Mr. Bonilla's truck, reached in and unlocked the passenger door, then drug him out by the collar of his clothing through passenger door onto the ground. All the while, the agents had their weapons pointed at Bonilla. Bonilla was then zip-tied and ultimately placed in another ICE vehicle. ICE agents immediately initiated their emergency lights and sirens.

This event is at the center of the charges against the Defendants in this case and the precise event upon which Count 3 against Defendant Bonilla is based. As will be shown, this entry of the ICE agents onto this private road was unlawful. Thus, the factual basis for the charges against the Defendants would not have occurred but for the unlawful actions of the agents in entering this property without legal justification in the first place. This unlawful action and the extraordinarily aggressive response to this minor contact between these vehicles should not be sanctioned by this Court and this case should be dismissed.

On January 13, 2026 and now, Sagittarius Lane is currently a private road leading into "The Residences at Hardin Valley" that were then, and are now, in a "state of active construction." Affidavit in Support of Criminal Complaint, case No. 3:26-MJ-1018, Para. 5, p. 2. None of the townhomes in that development were complete on that date, although the exterior structures had been built by then, and no residents lived there. *See* Exhibit A, (aerial photo attached). The

---

[1] Sagittarius Lane cannot be located on a GPS at this point because it is not yet a publicly accessible road.

structures have been built. The road into the construction site is only accessible from Hardin Valley road. The construction site contains a significant amount of private property which one would expect to see on a construction site, including dump trucks, various tools, and other machinery. The site, including Sagittarius Lane, is maintained by the developer, and the developer holds liability for the driveway until it is turned over to and accepted by the county, at which point it would become a public road. Sagittarius Lane connects to Hardin Valley Road and was secured by a gate and was posted with a no trespassing sign.

## II. Federal Agents Entered the Construction Site Unlawfully on January 13, 2026.

### A. The Fourth Amendment Applies to Businesses and Commercial Properties as well as Homes.

"The Warrant Clause of the Fourth Amendment protects commercial buildings as well as private homes. To hold otherwise would belie the origin of that Amendment, and the American colonial experience." *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 312 (1978). "The businessman, like the occupant of a residence, has a constitutional right to go about his business free from unreasonable official entries upon his private commercial property." *Id* (citing *See v. Seattle*, 387 U.S. 541, 543 (1967)). While a construction site is different because it is partially outdoors, the site at issue was still constitutionally protected. What a person "seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." *Katz v. United States* 389 U.S. 347, 351 (1967) (citations omitted). For example, in Tennessee, the criminal trespass statute allows for prosecution when someone enters a construction site without permission. *State v. Layne*, No. M1997-00025-CCA-R3-CD, 2000 Tenn. Crim. App. LEXIS 998 (Crim. App. Dec. 29, 2000). While criminal trespass is not a definitive test of a Fourth Amendment violation, it is persuasive.

As addressed, the site at issue had a gate and a sign, which read no trespassing. The construction site contains multiple unoccupied townhomes and structures. Law enforcement was not permitted to enter the property. However, law enforcement entered this private property. During this entry, the vehicle that law enforcement was driving made contact with the vehicle that Mr. Alexander Bonilla-Servin was driving. There are conflicting eyewitness testimonies as to whether law enforcement's vehicle made contact with Mr. Bonilla-Servin's vehicle or vice versa.

### B. Federal Law Enforcement Violated the Fourth Amendment when Entering the Sagittarius Lane

Federal agents told the individuals on the jobsite that they had warrant(s).[2] No warrant has been produced in discovery at the time this motion was filed. No warrant was presented to anyone at the time of the entry, nor was consent to enter the premises obtained.

The Fourth Amendment protects individuals as well as businesses from warrantless searches. "The basic purpose of this Amendment, as recognized in countless decisions of this Court, is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." *Camara v. Mun. Ct. of San Francisco*, 387 U.S. 523 (1967). A judicial warrant is distinct from an administrative warrant. To satisfy constitutional requirements, a valid judicial warrant authorizing entry into a home or other private space must be issued by a "neutral and detached magistrate," *Johnson v. United States*, 333 U.S. 10, 14 (1948)—an independent judicial officer who is not aligned with, employed by, or financially connected to the law enforcement agency seeking the warrant. A judicial warrant requires a warrant application that complies with the particularity requirements of Rule 41 of the Federal Rules of Criminal Procedure and the Fourth Amendment. *In re Sealed Search Warrant Application*, 784 F. Supp. 3d 970, 974 (S.D. Tex. 2025).

---

[2] It is unclear whether the ICE agents were referring to administrative warrants or judicial warrants.

"Rule 41(d)(1) is the proper vehicle for searching for and seizing aliens" and is solidified by the comments in Rule 41 "This part of the amendment to Rule 41 covers . . . the arrest of a deportable alien under 8 U.S.C. § 1252, whose presence at a certain place might be important evidence of criminal conduct by another person, such as the harboring of undocumented aliens under 8 U.S.C. § 1324(a)(3)." *Id* (quoting Fed. R. Crim. P. 41 Advisory Committee's Note 1979 amendment).

In alignment with the Fourth Amendment protections, DHS regulations prevent search and seizure without a judicial warrant. "A search warrant should be obtained prior to conducting a search in a criminal investigation unless a specific exception to the warrant requirement is authorized by statute or recognized by the courts." 8 C.F.R. § 287.9. Further, ICE is not to enter "non-public areas of a business, a residence including the curtilage or such residence, or a farm or other outdoor agricultural operation" "for the purpose of questioning the occupants or employees concerning their right to be or remain in the United States unless the officer has either a warrant or the consent of the owner or other person in control of the site to be inspected. When consent to enter is given, the immigration officer must note on the officer's report that consent was given and, if possible, by whom consent was given. If the immigration officer is denied access to conduct a site inspection, a warrant may be obtained." 8 C.F.R. § 287.8(f)(2) (2025).

ICE officers did not obtain a judicial warrant, nor do any of the applicable exceptions apply. For these reasons, ICE entered the property unlawfully.

### III. Counts Two, Three, and Four Should be Dismissed Because the Offense Requires that the Officers be Engaged in the Lawful Discharge of their Duties

Count Four alleges that Mr. Wells and Mr. Bonilla-Servin conspired to "prevent by force, intimidation, and threat, officers of the United States from discharging their official duties, and to injure officers of the United States in their persons and property on account of, and while such

officers were engaged in, the lawful discharge of the duties of their offices, and to injure the property of such officers so as to molest, interrupt, hinder, and impede them in the discharge of their official duties." In order to violate the statute, the officers must have been engaged in the lawful discharge of their duties. Here, ICE did not enter the premises lawfully, and therefore, as a matter of law, Count Four should be dismissed. *See United States v. Levin*, 973 F.2d 463 (6th Cir. 1992); *United States v. Vertz*, 40 Fed.Appx. 69, 70 (6th Cir.2002) (unpublished) (stating that "where the defendant is arguing that as a matter of law the undisputed facts do not constitute the offense charged in an indictment, the Court is reviewing a question of law, not fact").

Likewise, Counts Two and Three charge an offense in which an essential element of the offense is the performance of official duties. Because the duties that ICE was engaged in are not lawful, both counts should be dismissed as a matter of law.

## IV. The Appropriate Remedy is Dismissal of the Indictment.

Generally, in cases of a Fourth Amendment violation, the exclusionary rule is applied. However, in this case, the seizure was of individuals instead of items. The entire case revolves around the unlawful entry of ICE agents onto the Sagittarius Lane property. However, in extraordinary cases when a case has been brought by methods that "offend the Due Process Clause" in a way that is shocking to the conscience of the court, dismissal is the appropriate remedy. *Rochin v. California*, 342 U.S. 165, 174 (1952). This is one of those cases. The entire case is based upon this unconstitutional entry and search of the Sagittarius Lane job site. The ICE officers did not have permission, nor the legal authority to enter the premises. After their unlawful entry without a warrant or consent, and after what can only be characterized as extremely minor contact between Defendant Bonilla's vehicle and the ICE agents vehicle, the agents acted with unnecessary, unwarranted, and unjustified violence and aggression towards Defendant Bonilla

putting not only him but others present at the site in danger.  This is the kind of government action that violates the Due Process Clause of the Fifth Amendment giving rise to necessity of dismissing this indictment.  In the alternative, the defendant requests that all evidence obtained as a result of the unconstitutional search and entry be suppressed. *See Wong Sun v. United States*, 371 U.S. 471 (1963).

Defendants request an evidentiary hearing on this issue.

Respectfully submitted this 20th day of February 2026.

    /s/ Georgia A. Miller
WADE V. DAVIES [BPR #016052]
GEORGIA A. MILLER [BPR #041197]
The Davies Law Firm, PLLC
900 S. Gay Street, Suite 802
Knoxville, TN 37902
(865) 686-6333
wdavies@wadedavies.law
*Counsel for Tyler Wells*


***/s/ David M. Eldridge***
DAVID M. ELDRIDGE (BPR # 012408)
LORETTA CRAVENS (BPR # 023576)
SHARON LEVERON (BPR # 042181)
ELDRIDGE & CRAVENS, P.C.
The Cherokee Building
400 West Church Avenue, Suite 101
Knoxville, Tennessee 37902
(865) 544-2010
Email: deldridge@ecattorneys.law
Email: sleveron@ecattorneys.law
*Attorneys for Alexander Bonilla-Servin*