**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT KNOXVILLE**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CASE NO. 3:26-CR-14 |
| v. | ) | |
| | ) | JUDGES CRYTZER/McCOOK |
| TYLER SHANE WELLS and | ) | |
| ALEXANDER BONILLA-SERVIN | ) | |

**UNITED STATES' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS FOR VAGUENESS**

On January 13, 2026, federal immigration officers arrived at a construction site to locate and apprehend individuals unlawfully present in the United States. Federal immigration officers had been investigating this construction site since approximately December 2025. Wells knew about the federal immigration enforcement activity surrounding his construction site, and Wells took affirmative steps to impede and interfere in that federal investigation to protect the illegal aliens he harbored from being apprehended. Wells used his cellphone to alert his on-site workers when immigration officers were nearby. Both defendants also took active steps to prevent the officers from reaching anyone on the site. That is concealing, harboring, and shielding from detection in its plainest sense—and the defendants now ask this Court to hold that no person could discern what those words mean. The motion also contends that Count Four must fall because the officers were not in the "lawful discharge" of their duties. Neither argument has merit. Accordingly, the Motion to Dismiss for Vagueness [Doc. 46] should be denied.

## I. LEGAL STANDARD

Federal statutes carry a strong presumption of constitutionality, and a party challenging such a statute bears the burden of establishing its invalidity. *United States v. Salerno*, 481 U.S. 739, 745 (1987). Section 1324 has been enforced for over a century without being struck down for

vagueness—a point that underscores how far the defendants must reach to prevail here. A criminal statute is void for vagueness only if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015); *see also United States v. Williams*, 553 U.S. 285, 304 (2008) (noting that a statute is vague when it is "so standardless that it authorizes or encourages seriously discriminatory enforcement"). The standard is demanding: "the mere fact that close cases can be envisioned" does not render a statute vague. *Williams*, 553 U.S. at 305. A statute does not become vague merely because it requires a person to conform his conduct to an imprecise but comprehensible normative standard. *Id.* at 304. Courts must also consider that "[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Holder v. Laws Law L.*, 561 U.S. 1, 18–19 (2010) (quoting *Village of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.,* 455 U.S. 489, 495 (1982)).

When a defendant challenges a statute for vagueness outside the First Amendment context—as here—the challenge must be assessed on an as-applied basis, not facially. *United States v. Mazurie*, 419 U.S. 544, 550 (1975). The question, then, is not whether the statute might be vague in hypothetical applications, but whether it is vague as applied to the defendants' particular conduct. The defendants' argument is facial in form—they attack the statutory terms in the abstract rather than as applied to their own conduct. That approach is foreclosed outside the First Amendment. And where, as here, the defendants' conduct falls squarely within the core of the statute's prohibition, a vagueness challenge will not succeed.

The defendants invoke *United States v. Davis*, 588 U.S. 445 (2019), and *Sessions v. Dimaya*, 584 U.S. 148 (2018), but those cases prove the government's point, not the defendants'. Both struck down residual clauses—provisions requiring courts to speculate about whether a "typical" or "ordinary case" of an offense "involves" a requisite degree of force or risk. The constitutional defect in each case was a residual clause that demanded probabilistic guesswork about a hypothetical offense. Section 1324, on the other hand, contains nothing of the sort. "Conceal, harbor, and shield from detection" are concrete action verbs describing observable, real-world conduct—not an open-ended residual clause requiring courts to imagine a prototypical crime and guess whether it meets an abstract standard. The vagueness doctrine targets precisely that kind of legislative drafting, and the text of § 1324 avoids it entirely.

## II.     THE TERMS ARE NOT UNCONSTITUTIONALLY VAGUE

Section 1324(a)(1)(A)(iii) criminalizes the conduct of any person who, "knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, conceals, harbors, or shields from detection, or attempts to conceal, harbor, or shield from detection, such alien in any place." The defendants argue that "conceal, harbor, and shield from detection" are fatally vague. They complain that "[h]arbor is not defined in the statute, nor is it a 'term of art' with clear confines under the law." [Doc. 46 at PageID #: 258]. But the Sixth Circuit defined it in *United States v. Zheng*, 87 F.4th 336 (6th Cir. 2023)—and other circuits have done the same. *See, e.g.*, *United States v. Ozcelik*, 527 F.3d 88, 99–100 (3d Cir. 2008); *United States v. Tipton*, 518 F.3d 591, 595 (8th Cir. 2008); *United States v. Shum*, 496 F.3d 390, 392 (5th Cir. 2007).

The *Zheng* Court, for example, squarely addressed the meaning of "harboring" under § 1324. 87 F.4th at 343 (holding that "harboring encompasses conduct that tends to substantially facilitate noncitizens remaining in the country illegally and prevent authorities from detecting the noncitizens' presence."). There, the court surveyed the circuit split over the definition of "harbor" and adopted the approach of the Third, Fifth, and Eighth Circuits: "harboring" encompasses conduct that tends to substantially facilitate noncitizens remaining in the country illegally and to prevent authorities from detecting them. *Id.* at 344–45. The Sixth Circuit sustained convictions under § 1324(a)(1)(A)(iii) where the defendants housed illegal noncitizens, transported them to and from work, and instructed them not to go outside or make noise—conduct aimed at shielding them from law enforcement. *Id.* at 339–40, 347–48. The *Zheng* Court's statutory analysis confirms that "conceal, harbor, and shield from detection" carry well-settled meanings and provide adequate notice of the prohibited conduct. *Id.* at 344–45.

Numerous other circuits agree. The Second Circuit traced the legislative text of § 1324 from the Immigration Act of 1907 through the Immigration Reform and Control Act of 1986 and concluded that the statutory terms operate as a coherent whole: "conceals" and "shields from detection" both carry an obvious connotation of secrecy and hiding, and the canon of *noscitur a sociis* confirms that "harbors," as the third term in the series, shares this connotation. *United States v. Vargas-Cordon*, 733 F.3d 366, 381–82 (2d Cir. 2013) (citing *Gustafson v. Alloyd Co.*, 513 U.S. 561, 575 (1995)). A person of ordinary intelligence would understand that telephoning workers to warn them of the presence of federal immigration officers and physically impeding officers from reaching a construction site constitutes concealing, harboring, or shielding from detection.

The defendants argue that the circuit split on the precise contours of "harboring" proves the statute is vague. It does not. A disagreement among courts over the outer boundaries of a

statutory term is a sign that courts are engaged in the ordinary work of statutory interpretation—not that the statute itself fails to provide notice. *See Williams*, 553 U.S. at 305 ("[T]he mere fact that close cases can be envisioned" does not render a statute vague); *Holder*, 561 U.S. at 20–21. In this district, the question is settled: the Sixth Circuit resolved it in *Zheng*, and that holding is binding here. 87 F.4th at 343-44. Whatever uncertainty may exist at the margins of other circuits' approaches, this Court applies the Sixth Circuit's definition—and under that definition, the defendants' conduct is prohibited. *See id.*

The defendants may point to *Ozcelik*, 527 F.3d at 101, where the Third Circuit held that telling someone to "keep a low profile" amounted to "general advice" rather than harboring. But Wells did not offer general advice. He telephoned workers at the construction site to warn them that federal immigration officers had arrived and that the workers needed to leave the site—a targeted, real-time act designed to shield specific individuals from detection by specific officers. That is not a close case.

The defendants' conduct falls within the core of what § 1324 prohibits. According to the Indictment, the affidavit for criminal complaint, and the Wells text messages exhibit from the detention hearing [R. 30, Exhibit List], Bonilla-Servin and Wells conspired together and with others to impede and interfere with lawful federal immigration enforcement. For example, Bonilla-Servin conducted counter-surveillance of federal immigration officers as the officers attempted to surveil the construction site from across the street. Wells also telephoned workers at the construction site to warn them that federal immigration officers were present and that the workers needed to leave the site, and both defendants took active steps—in the form of an active blockade with a large truck—to prevent immigration enforcement officers from entering the construction site, and locating and apprehending individuals unlawfully in the United States. That

is concealing, harboring, and shielding in its plainest sense—warning people to flee and hide from law enforcement so they will not be found. No person of ordinary intelligence would wonder whether that conduct was prohibited. *See Holder*, 561 U.S. at 20 ("The dispositive point here is that the statutory terms are clear in their application to plaintiffs' proposed conduct").

The statute's scienter requirement independently forecloses any vagueness concern. Section 1324(a)(1)(A)(iii) applies only to a person who acts "knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law." The Supreme Court has recognized that "a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed." *Hoffman Estates*, 455 U.S. at 499. Because § 1324 requires proof that the defendant knew or recklessly disregarded the noncitizens' unlawful status, no person risks unintentionally stumbling into a harboring conviction through innocent conduct. *See Holder*, 561 U.S. at 16–18. The *mens rea* requirement narrows the statute's reach to precisely those individuals who, like the defendants in this case, acted with culpable knowledge, which is exactly what the vagueness doctrine demands. *See Gonzales v. Carhart*, 550 U.S. 124, 149 (2007) ("The Court has made clear that scienter requirements alleviate vagueness concerns.").

## III. COUNT FOUR IS NOT VAGUE BECAUSE THE OFFICERS WERE IN THE LAWFUL DISCHARGE OF THEIR DUTIES

The defendants' second argument is that Count Four—conspiracy to prevent, by force, intimidation, or threat, federal officers under 18 U.S.C. § 372—must be dismissed because the HSI and ERO officers were not engaged in the "lawful discharge" of their duties when they attempted to enter Sagittarius Lane in an effort to enforce federal immigration law. The defendants contend that because the officers lacked a judicial warrant authorizing entry onto—what the defendants claim—is a private road, the officers' actions were unlawful, and the defendants therefore could

not have conspired to prevent, by force, intimidation, or threat, the federal officers in the "lawful discharge" of their duties.

This argument conflates vagueness with a factual defense on the merits—and misapplies both. The phrase "lawful discharge of duties" in § 372 is not vague; it means that the officers were performing authorized official functions. HSI and ERO officers are authorized by statute to surveil, locate, and apprehend individuals unlawfully present in the United States. 8 U.S.C. § 1226(a); 8 U.S.C. § 1357(a). On January 13, 2026, the officers were conducting surveillance of the construction site and then attempted to enter the site to enforce federal immigration law. They were acting under color of federal authority in pursuit of their statutory mandate. Whether their attempted entry onto a particular road complied with the Fourth Amendment is a suppression question, not a vagueness question—and the defendants have filed a separate motion on that point [Doc. 47], which the United States addresses there.

The defendants' real complaint is not that § 372 fails to define "lawful discharge"—it is that they dispute whether the officers were acting lawfully on January 13, 2026. That is a trial question, not a constitutional one. Even if some Fourth Amendment issue attended the officers' attempted entry onto Sagittarius Lane, that would not render § 372 void for vagueness. The vagueness doctrine asks whether the statute provides adequate notice of the conduct it prohibits; it does not ask whether the facts of a particular case present a disputed legal question about the officers' authority. *See Johnson*, 576 U.S. at 595 (holding that a statute is unconstitutionally vague if "it fails to give ordinary people fair notice of the conduct it punishes" or is "so standardless that it invites arbitrary enforcement"); *Holder*, 561 U.S. at 18-19 (explaining that a vagueness challenge must be assessed based on the statute's application to the defendant's own conduct, not abstract hypotheticals). Section 372 clearly prohibits conspiring to prevent, by force, intimidation,

or threat, federal officers in the lawful discharge of their duties. Whether the officers' duties were being lawfully discharged in any given instance is a factual question for the jury, not a constitutional defect in the statute. *See United States v. Levin*, 973 F.2d 463, 467 (6th Cir. 1992) (holding that legal questions raised by pretrial motions are properly resolved before trial where operative facts are undisputed).

The defendants' own motion proves the point. They do not argue that "lawful discharge" is a term whose meaning they cannot discern. They argue that the officers were not engaged in the lawful discharge of their duties because they lacked a judicial warrant. [Doc. 46 at PageID #: 259]. That is a factual dispute about the officers' conduct, not a constitutional deficiency in the statute's text. A defendant who understands precisely what a statute means cannot credibly claim it fails to give him notice.

## IV. CONCLUSION

Congress told every person of ordinary intelligence what § 1324 forbids: do not conceal, harbor, or shield from detection someone you know is in this country unlawfully. The Sixth Circuit has found those terms clear. The scienter requirement ensures that no one stumbles into a conviction through innocent conduct. And the defendants' own actions on January 13, 2026—conducting off-site counter-surveillance of the federal officers, telephoning workers to warn them of federal officers and instructing workers to flee, and physically blocking those officers from reaching anyone on site—fall not at the statute's margins but at its core. For these reasons, the defendants' Motion to Dismiss for Vagueness [Doc. 46] should be denied. The statute gave fair notice. The defendants understood it. They violated it anyway.

Respectfully submitted,

FRANCIS M. HAMILTON III,
UNITED STATES ATTORNEY

s/David P. Lewen, Jr.
DAVID P. LEWEN, JR.
Assistant United States Attorney
TN Bar No. 042915
800 Market Street, Suite 211
Knoxville, TN 37902
(865) 545-4167
david.lewen@usdoj.gov

s/ Russ Swafford
RUSS SWAFFORD
Assistant United States Attorney
Tennessee Bar No. 034803
1110 Market Street, Suite 515
Chattanooga, Tennessee 37402
(423) 385-1332
russ.swafford@usdoj.gov