UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br>v.<br><br>TYLER SHANE WELLS and<br>ALEXANDER BONILLA-SERVIN,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 3:26-CR-14-KAC-JEM |

**MEMORANDUM AND ORDER**

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or recommendation as appropriate. The Government moves the Court to quash subpoenas served on Homeland Security Investigations ("HSI") Special Agent Gabriel Villegas and Enforcement and Removal Operations ("ERO") Deportation Officer Anthony Perrone ("the officers") to appear and testify at a motion hearing on a dispositive motion to dismiss the charges or alternatively to suppress evidence based upon the officers' warrantless entry onto a privately-owned construction site ("the property") [Doc. 170 p. 1]. The Government argues the officers' testimony is neither relevant nor material to the issues before the Court and, thus, requiring the officers to attend the hearing is oppressive [*Id*. at 8, 10]. Alternatively, it asserts that an evidentiary hearing is not warranted because the Court can decide all issues on purely legal grounds [*Id*. at 1, 7]. Defendants argue that the officers' testimony is relevant and necessary to whether and under what authority the officers entered private property and whether they were engaged in the lawful pursuit of their duties at the time of entry [Doc. 172 pp. 2–3].

After careful consideration of the parties' arguments and the relevant law, the undersigned concludes that the officers' testimony is relevant and necessary for the Court to determine the facts

and circumstances surrounding the officers' entry (if any) onto the property, which in turn is necessary to the Court's evaluation of Defendants' arguments that the officers' entry violated the Fourth Amendment. Accordingly, the Court **DENIES** the United States' Motion to Quash Subpoenas [**Doc. 170**] but limits Defendants' questioning of the officers to any entry onto the property and the first ten subjects of inquiry listed in the attachment to the subpoenas.

## I. BACKGROUND

Defendants Tyler Wells, Alexander Bonilla-Servin, Omar Bonilla-Serna, and Nicholas Pastore are charged in a Superseding Indictment with conspiracy to harbor illegal aliens (Count One) and six counts of aiding and abetting each other in harboring illegal aliens for commercial advantage and private gain (Counts Four–Nine) [Doc. 73 pp. 1, 4–7]. Defendants Wells, Bonilla-Servin, and Bonilla-Serna are also charged with conspiracy to forcibly impede federal officers in the performance of official duties (Count Three) [*Id*. at 2–4]. Defendant Bonilla-Servin is further charged with forcibly assaulting or resisting two federal officers, G.V. and A.P., in the performance of their official duties by striking the officers' vehicle with his truck (Count Two) [*Id*. at 2].

On February 20, 2027, Defendants Wells and Bonilla-Servin jointly filed a Motion to Dismiss Indictment Based on Unlawful Entry of Federal Officers [Doc. 47]. Citing to the Fourth and Fifth Amendments, Defendants ask the Court to dismiss the charges because they stem from ICE officers' unlawful entry onto private property in an unduly aggressive manner that shocks the conscience thereby offending due process [*Id*. at 1–2, 6–7]. Alternatively, Defendants contend that the officers' warrantless entry onto the property violated their Fourth Amendment rights and, thus, the Court should suppress any evidence resulting from the unconstitutional entry [*Id*. at 4–5, 7]. Finally, Defendants argue that the Court should dismiss Counts Two and Three because they

require that the officers be engaged in the lawful discharge of their official duties and here the ICE officers did not enter the premises lawfully [*Id*. at 5–6].

In response, the Government denies that a Fourth Amendment violation occurred because the open fields doctrine applies to the property and immigration statutes authorized the officers' presence [Doc. 61 pp. 1–5]. Moreover, it contends that Defendants lack standing to challenge the officers' actions and that dismissal is not a remedy for a Fourth Amendment violation [*Id*. at 1, 6–9]. The Government maintains that the arrest of six individuals not validly in the United States occurred in an adjoining neighborhood and, thus, the arrests are too attenuated from the officers' conduct to be considered suppressible evidence [*Id*. at 10–11].

In reply, Defendants argue that the ICE officers lacked the legal authority to enter the property, which they contend is not an open field, nor was any illegal conduct visible [Doc. 78 pp. 1–2]. They maintain that the ICE officers lacked statutory or other authority to enter the property [*Id*. at 2–3]. Defendants contend that as employees, they have standing to challenge the officers' unlawful entry [*Id*. at 3]. They assert dismissal of the charges is an available and appropriate remedy in this case because the officers' methods offend due process to an extent that shocks the conscience [*Id*. at 4]. Finally, Defendants deny that attenuating circumstances break the causal chain between the initial encounter with the officers and the discovery and arrest of the six people whom Defendants are alleged to have harbored and to have conspired to harbor [*Id*.]. Thus, they assert that "any evidence, including notes related to [the six individuals'] statements, should be suppressed" [*Id*.].

The Government filed a sur-reply contending that the officers' Jeep was struck by Defendant Bonilla-Servin's truck before they passed through the gate and, thus, the officers never entered the property [Doc. 86 pp. 1–2]. It also asserts that law enforcement arrested the six illegal

aliens after they fled the property and entered an adjoining neighborhood [*Id*. at 3]. Thus, it contends that the Court need not reach the question of whether the officers' entry onto the property would have comported with the Fourth Amendment because no entry or search of the property occurred [*Id*.].

The Court permitted Defendants to respond to the Government's sur-reply [Doc. 99]. Defendant Wells filed a sur-reply asserting that the property begins before the gate at the point where Sagittarius Lane abuts Hardin Valley Road [Doc. 108 pp. 2–3]. He further contends that video footage from a Tennessee Highway Patrol dash camera shows that officers crossed behind the gate several times [*Id*. at 1–2]. Defendant Bonilla-Servin moves to adopt Defendant Wells's sur-reply [Doc. 109].

The undersigned initially set a motion hearing on Defendants' pending motions for March 27, 2026 [Notice of March 3, 2026]. The hearing was moved to June 18, 2026, following the Superseding Indictment, which added Defendants Bonilla-Serna and Pastore [Doc. 111 p. 11]. Thereafter, the hearing was moved again to September 9, 2026, to allow Defendants Bonilla-Serna and Pastore time to file and/or join pretrial motions [Doc. 142 pp. 19–20, 22 & Notice of June 12, 2026].

Defendant Bonilla-Servin served subpoenas to testify at the September 9 motion hearing on Officer Perrone and Special Agent Villegas [*See* Doc. 170-1 pp. 1–6]. The subpoenas command the officers to appear "[t]o testify on topics identified in attached schedule A" [*Id*. at 1, 4]. Schedule A lists eleven categories of inquiry: (1) whether the officers had a warrant and the details of any warrant, (2) whether the officers saw a gate at the entrance to the property, (3) whether the officers saw a "no trespassing" sign at the entrance to the property, (4) were the officers aware that the site was private property and did they know other officers were told they could not enter,

(5) what had the officers observed about the entrance to the property prior to their entry, (6) whether the officers were asked if they had a warrant and how they responded, (7) did the officers request consent to enter, (8) were the officers asked and did they identify whom they sought to locate on the property, (9) did the officers state that they wanted to question particular individuals about their right to be in the United States, (10) did the officers state tell anyone their purpose for entering the property, and (11) questions about an aerial drone operating above the property on January 13, 2026 [*Id*. at 3, 6].

On August 24, 2026, sixteen days before the motion hearing, the Government[1] moved to quash the subpoenas for Special Agent Villegas and Officer Perrone or, alternatively, to rule that an evidentiary hearing is not needed to rule on Defendants' motion to dismiss [Doc. 170 p. 1]. It argues that the officers' testimony is irrelevant and immaterial to a motion to dismiss because dismissal is not a remedy for an unlawful entry [*Id*. at 1–2, 3–5]. Regarding suppression, the Government contends that Defendants lack standing to challenge a search of the property, and even if they had standing, they fail to identify any suppressible evidence [*Id*. at 5–6]. As to Defendants' argument that the Court should dismiss the indictment because the officers were not engaged in the lawful performance of official duties, the Government argues that "lawfulness" is only at issue in Count Three and whether the officers acted lawfully is an element for the jury to decide [*Id*. at 6]. It maintains that the subpoenas violate Federal Rule of Criminal Procedure 17 because the officers' testimony is neither relevant nor material and Defendants are using the subpoenas to gain discovery [*Id*. at 8–10]. The Government argues that requiring the officers to

1 The Government asserts that it has standing to challenge the subpoenas of federal officers for testimony regarding their official duties [Doc. 170 p. 2]. Defendants do not challenge the Government's authority to bring the motion to quash on behalf of the officers.

appear and testify when their testimony cannot affect the ruling is "oppressive" and the subpoenas should be quashed [*Id*. at 10].

Defendants respond that the testimony of Special Agent Villegas and Officer Perrone is material and necessary because whether the officers entered the property lawfully, meaning without running afoul of the Fourth Amendment, is central to determining the motion [Doc. 172 pp. 2–3, 6–7]. They maintain that an evidentiary hearing is needed to determine if the officers entered onto the property and whether their entry was lawful [*Id*. at 2–3]. Defendants argue that the Government's motion to quash is untimely[2] and its reasons for quashing require the Court to rule on the merits of their motion to dismiss before establishing the factual basis for the requested ruling [*Id*. at 3–6]. Defendants contend that the Government erroneously applies requirements for a subpoena duces tecum to their subpoenas for witness testimony [*Id*. at 8–9]. They assert that limited testimony is neither unreasonable nor oppressive, and if the Court finds the scope of the proposed questioning to be too broad, it can narrow the scope of the officers' testimony [*Id*. at 9–10].

The Court heard argument on the Motion to Quash at the September 9 motion hearing [*See* Doc. 177, Minutes]. Assistant United States Attorneys David Lewen and Russ Swafford

---

[2] Defendants' arguments on the untimeliness of the Government's Motion to Quash are linked to their efforts to comply with "*Touhy*" procedures [*See* Doc. 172 pp. 4–6]. *See United States ex rel. Touhy v. Ragen*, 340 U.S. 462, 470 (1951) (holding that the Attorney General may promulgate regulations regarding Department of Justice ("DOJ") employees' testimony in litigation). At the motion hearing, AUSA Lewen stated that the officers are DHS employees, not DOJ employees, and he believes that the DHS officers will not assert *Touhy*. He agreed that the Court need not address any *Touhy* issues in relation to the Motion to Quash. Based upon this explanation and that the Court continued the motion hearing on Defendants' Motion to Dismiss for Unlawful Entry to address the Motion to Quash, the Court does not find the motion to be untimely.

appeared on behalf of the Government. Attorneys Wade V. Davies and Georgia Miller represented Defendant Wells, and Attorneys David M. Eldridge, Loretta G. Cravens, and Sharon Leveron represented Defendant Bonilla-Servin.[3] Both Defendants were also present. After hearing the parties' arguments on the Motion to Quash, the Court took the matter under advisement and reset the hearing on Defendants' Motion to Dismiss Indictment Based on Unlawful Entry of Federal Officers [Doc. 47] to September 30, 2026. Following the September 9 hearing, the undersigned granted Defendant Bonilla-Servin's unopposed motion to modify the subpoenas for Special Agent Villegas and Officer Perrone to require appearance and testimony at the September 30 motion hearing unless the Court otherwise quashes or modifies the subpoenas [Doc. 183].

## II. ANALYSIS

Rule 17(a) permits a party to subpoena "a witness to attend and testify" at trial or other proceeding. Fed. R. Crim. P. 17(a). Rule 17(c)(1) permits a defendant to "order [a] witness to produce any books, papers, documents, data, or other objects the subpoena designates." Fed. R. Crim. P. 17(c)(1). The Rule "implements a criminal defendant's constitutional right 'to have compulsory process for obtaining witnesses in his favor' by providing a means to subpoena witnesses and documents for a trial or a hearing." *United States v. Llanex-Garcia*, 735 F.3d 483, 493 (6th Cir. 2013).

The Court has discretion to quash or modify subpoenas issued under both Rule 17(a) and Rule 17(c)(1). *United States v. Moore*, 917 F.2d 215, 230 (6th Cir. 1990) (discussing with regard to Rule 17(b) the court's "wide discretion" to issue or strike trial subpoenas); *see also Llanex-Garcia*, 735 F.3d at 499 (holding that district courts have discretion to supervise subpoenas under

[3] Attorney Robert R. Kurtz was also present with his client Defendant Bonilla-Serna, but Defendant Bonilla-Serna did not join in the Motion to Dismiss [Doc. 47].

Rule 17(c) using the "mechanisms for exercising oversight as they see fit"); *United States v. Pate*, No. 3:09-00106, 2024 WL 1773996, at *1 (M.D. Tenn. Apr. 24, 2024) (discussing the court's discretion with respect to both Rule 17(a) subpoenas and Rule 17(c) subpoenas duces tecum). Upon motion, the Court may "quash or modify the subpoena if compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2); *see also Llanex-Garcia*, 735 F.3d at 499; *United States v. You*, No. 2:19-CR-14, 2024 WL 1404378, at *5 (E.D. Tenn. Apr. 1, 2024) ("The court may control the use of Rule 17(c) . . . by its power to rule on motions to quash or modify." (omission in original and citation omitted)).

To protect against misuse by criminal defendants, the Supreme Court, in *United States v. Nixon*, set out four factors for evaluating the propriety of a Rule 17(c) subpoena (the "*Nixon* factors"):

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

418 U.S. 683, 699 (1974); *see also United States v. Hughes*, 895 F.2d 1135, 1146 (6th Cir. 1990) (listing the *Nixon* factors); *You*, 2024 WL 1404378, at *5 ("The four factors established by *United States v. Nixon* must be met to enforce the subpoena and 'require production' of subpoenaed documents."); *see also Llanez-Garcia*, 735 F.3d at 494 (explaining that a subpoena duces tecum permitted by "Rule 17(c) is not meant to provide an additional way to secure pretrial discovery" (citing *Bowman Dairy Co. v. U.S.*, 341 U.S. 214, 219 (1951))).

The *Nixon* factors of relevance, necessity or materiality, and good faith also provide a useful measure in evaluating the propriety of a subpoena for testimony under Rule 17(a). *Pate*,

2024 WL 1773996, at *1 ("When evaluating a motion to quash a subpoena ad testificandum, courts frequently draw on principles analogous to those used when deciding a motion to quash a subpoenas duces tecum." (citations omitted)); *United States v. Peavler*, No. 3:15-CR-14, 2017 WL 1018304, at *2 (E.D. Ky. Mar. 10, 2017)) ("The same general standard [for subpoenas duces tecum] applies to subpoenaed production of documents at the time of trial." (citations omitted)); *see also Moore*, 917 F.2d at 230 (requiring indigent defendants requesting subpoenas under Rule 17(b) to make a preliminary showing that the witness is "necessary" by showing the witness is "relevant, material and useful to an adequate defense" (citation omitted)).

The foundation of Defendants' motion to dismiss is that law enforcement entered the property in violation of the Fourth Amendment. But the Government argues that no search occurred, so there can be no Fourth Amendment violation.[4] At the motion hearing, counsel for the Government referenced the Court of Appeals for the Sixth Circuit's statement in *United States v. Fellmy*:

> The Fourth Amendment protects "the right of the people" to be "secure in their persons . . . and effects, against unreasonable searches and seizures." To determine whether the officers violated the Fourth Amendment, we ask two questions. Did they commit a search . . . ? And if so, was that search . . . unreasonable?

165 F.4th 501, 504–05 (6th Cir. 2026) (citation omitted), *cert. denied*, 146 S. Ct. 2559 (2026).

Defendants argue that the testimony of Special Agent Villegas and Officer Perrone is necessary to determine whether a Fourth Amendment violation occurred. They allege that the officers drove onto a privately-owned construction site to search for undocumented workers

[4] The Government also asserts Defendants lack standing to bring the motion. But the Court of Appeals for the Sixth Circuit has recently noted that a court "need not [address standing] before addressing other aspects of the merits of a Fourth Amendment claim." *United States v. Moody*, No. 25-1898, 2026 WL 1961915, *2 n.1 (6th Cir. July 7, 2026) (quoting *Byrd v. United States*, 584 U.S. 395, 410 (2018)).

[Doc. 47 pp. 3–4]. They further argue that the officers entered the property (a fact disputed by the Government) by turning onto the private road to the construction site "without any legal justification for doing so, despite [Department of Homeland Security ("DHS")] regulations requiring a judicial warrant, consent, or an exception to the warrant requirement of the Fourth Amendment" [Doc. 172 pp. 6–7]. Defendants maintain that the officers' testimony is material to the facts of what occurred on January 13, 2026, such as "[w]hether an entry occurred; the location, timing, and manner of any attempted entry; what the officers observed; the character of the gate and signage; whether consent was sought or given; and the officers' stated purpose" [*Id*. at 7]. They contend that they intend to question the officers about "their own conduct and observations," which are central to the Fourth Amendment determination before the Court [*Id*. at 10]. In *Fellmy*, Judge Thapar noted in his concurrence that, under *United States v. Jones*, 565 U.S. 400, 407–11, 408 n.5 (2012), "a search occurs when officers 'trespass' onto constitutionally protected property to discover information." 165 F.4th at 512; *see also id.* at 507 (analyzing whether there was a common-law trespass). Hence, the testimony is relevant to whether there was a search (i.e., a trespass onto constitutionally protected property to discover information). And if it was an unreasonable search,[5] then the undersigned would need to evaluate the remedy for the Fourth Amendment violation. Defendants argue first for dismissal[6] and alternatively for suppression.

[5] The Government's arguments regarding the open fields doctrine and whether immigration statutes authorized the officers' conduct go to the reasonableness of the officers' entry.

[6] The Government observes that a motion to dismiss presents a legal inquiry and receipt of evidence in support thereof would intrude upon the province of the jury. *United States v. Vertz*, 40 F. App'x 69, 70 (6th Cir. 2002) ("When reviewing a Motion to Dismiss, where the defendant is arguing that as a matter of law the undisputed facts do not constitute the offense charged in an indictment, the Court is reviewing a question of law, not fact."); *United States v. Levin*, 973 F.2d 463, 469–70 (6th Cir. 1992) (affirming pretrial dismissal of the indictment because the facts were undisputed). The undersigned agrees with this proposition. To the extent Defendants argue that the officers' testimony is necessary to show whether they were engaged in the lawful

The Government maintains, however, that even if there was a Fourth Amendment violation, neither dismissal nor suppression is available as a remedy; thus, the officers' testimony is irrelevant. But Defendants request for dismissal relies on the nature of law enforcement's conduct [*see* Doc. 47 p. 6 (asserting that "in extraordinary cases when a case has been brought by methods that 'offend the Due Process Clause' in a way that is shocking to the conscience of the court, dismissal is the appropriate remedy (citing *Rochin v. California*, 342 U.S. 165, 174 (1952)))] and the parties dispute whether attenuating circumstances break the causal chain between the initial encounter with the officers and the discovery and arrest of the six people whom Defendants are alleged to have harbored and to have conspired to harbor [*compare* Doc. 61 pp. 10–11 (asserting the arrest of the six individuals in an adjoining neighborhood was too attenuated from the officers' conduct to be suppressed) & Doc. 86 p. 3 *with* Doc. 78 p. 4 (arguing the officers' "entry onto the property is the direct cause of the detention of the [six] individuals")]. The officers' conduct during their alleged entry onto the property appears relevant to both inquiries. *See Moore*, 917 F.2d at 230 (observing a witness is "necessary" if he or she is "relevant, material and useful to an adequate defense" (citation omitted)).

Finally, the Government asserts Defendants' purpose in subpoenaing the officers is to obtain unauthorized discovery about the officers' account of the events of January 13, 2026. The subpoenas belie this assumption. As demonstrated by Schedule A, the requested testimony is narrowly tailored to focus on whether and why the officers entered the property. At the September 9 motion hearing, Defendants agreed not to include the eleventh question on drone surveillance.

---

exercise of their official duties as required by Count Three [Doc. 172 pp. 5–6], such testimony is improper. Whether the officers were engaged in the lawful exercise of their duties under 18 U.S.C. § 372 is a matter for the jury.

The focused nature of the expected testimony is not a "fishing expedition" but, instead, is targeted on whether a Fourth Amendment violation occurred.

In sum, after examining the proposed testimony in light of the parties' arguments and the applicable *Nixon* factors, the undersigned finds the sought-after testimony is relevant, material, and sought in good faith. Accordingly, the Court finds no basis to quash the subpoenas, which are limited by Schedule A and shall be further limited by striking question eleven.

## III. CONCLUSION

Accordingly, the Court **ORDERS** as follows:

(1) the Government's Motion to Quash Subpoenas [**Doc. 170**] is **DENIED**;

(2) the Court **MODIFIES** the subpoenas for Special Agent Villegas and Officer Perrone to strike the eleventh question in Schedule A; and

(3) Defendants' direct examination of Special Agent Villegas and Officer Perrone is limited to any entry onto the property and the first ten subjects of inquiry listed in the attachment to the subpoenas.

**IT IS SO ORDERED.**

ENTER:

Jill. E. McCook
United States Magistrate Judge